IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DEMETRIA MARIE BARRETT, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:17-cv-3251-B |
| | § | |
| MEDICREDIT, INC., | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant Medicredit, Inc. has filed a Motion for Sanctions, *see* Dkt. No. 34 (the "Sanctions Motion"), which United States District Judge Jane J. Boyle has referred to the undersigned United States magistrate judge for a hearing, if necessary, and determination under 28 U.S.C. § 636(b), *see* Dkt. No. 35. Invoking 28 U.S.C. § 1927, Medicredit explains that,

> [o]n November 30, 2017, Plaintiff [Demetria Marie Barrett] filed this lawsuit. Eighteen days later, Plaintiff passed away. Her counsel, however, either failed to notify Defendant of this fact or failed to diligently attempt to communicate with his late client and determine why she was unresponsive to his communications for nearly a year. This conduct unreasonably and vexatiously multiplied the proceedings in this case such that counsel for Plaintiff should be required to pay all of Medicredit's costs and attorney fees incurred from the inception of this suit.

Dkt. No. 34 at 1.

Barrett's counsel filed a response, *see* Dkt. No. 38, including the Affidavit of Nathan C. Volheim [Dkt. No. 38-1], one of Barrett's counsel of record, and Medicredit then filed a reply, *see* Dkt. No. 42.

For the reasons and to the extent explained below, the Court DENIES Defendant Medicredit, Inc.'s Motion for Sanctions [Dkt. No. 92]. *See generally Brown v. Bridges*, No. 3:12-cv-4947-P, 2015 WL 410062, at *1-*4 (N.D. Tex. Jan. 30, 2015) (explaining that, when a district judge refers a motion for sanctions to a magistrate judge, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the determination of whether Federal Rule of Civil Procedure 72(a) or 72(b) applies and that, when the magistrate judge finds that dismissal or another sanction disposing of a claim or defense in unwarranted, the motions should be characterized as non-dispositive and may be ruled on by the magistrate judge); *Allen v. Travis*, No. 3:06-cv-1361-M, 2007 WL 1989592, at *2 n.3 (N.D. Tex. July 10, 2007) (explaining that none of the motions for sanctions involve issues that are dispositive of the claims and that the magistrate judge could therefore rule on the motions as non-dispositive).

## Background

The following facts are not disputed or are not subject to serious or reasonable dispute on the record before the Court:

- On or about November 13, 2017, Plaintiff Demetria Marie Barrett spoke with individuals at Sulaiman Law Group, Ltd. ("Sulaiman") after she expressed interest in speaking with someone regarding debt collection phones calls she was receiving from Medicredit. *See* Dkt. No. 38-1 at 4.

- As part of this November 13, 2017 interaction between Barrett and Sulaiman, Barrett completed an "intake form," through which she provided information regarding her claims against Medicredit. *See* Dkt. No. 38-1 at 5.

- On November 14, 2017, someone from Sulaiman again spoke with Barrett regarding her potential matter against Medicredit, and, during the conversation,

the individual from Sulaiman confirmed the veracity of Barrett's claims and gathered further information from Barrett regarding her case against Medicredit. *See* Dkt. No. 38-1 at 5.

• Sulaiman's intake process that Barrett went through is designed, in part, to gather information from Barrett, including any relevant documents, regarding her case against Medicredit, and, in particular, including information typically requested by defense counsel in written discovery requests. *See* Dkt. No. 38-1 at 5.

• On November 30, 2017, attorneys from Sulaiman filed the Complaint on Barrett's behalf, "bring[ing] this action for damages pursuant to the Fair Debt Collection Practices Act ('FDCPA') under 15 U.S.C. §1692 et seq., the Telephone Consumer Protection Act ('TCPA') under 47 U.S.C. §227 et seq., and the Texas Debt Collection Act ('TDCA') under Tex. Fin. Code Ann. § 392 et seq. for Defendant's unlawful conduct." Dkt. No. 1 at 1; *see also* Dkt. Nos. 3-6 & 9 (notices of appearance).

• On December 1, 2017, someone from Sulaiman sent Barrett an email to advise that the Complaint had been filed. *See* Dkt. No. 38-1 at 5.

• Medicredit was served with a summons and the Complaint on December 6, 2017. *See* Dkt. No. 10.

• Barrett died on December 18, 2017. *See* Dkt. No. 41; Dkt No. 42 at 3; Dkt. No. 42-1.

• On December 27, 2017, Medicredit, through counsel, appeared in this case and filed Defendant's Unopposed Motion for Extension of Time to Respond to Complaint, requesting "a short ten-day extension, up to and including January 8, 2018, to file a responsive pleading to Plaintiff's Complaint." Dkt. No. 11 at 1. Medicredit's counsel certified "that counsel for Defendant conferred with counsel for [Barrett] on the merits of Defendant's motion" and that "[c]ounsel for [Barrett] does not oppose the relief requested therein." *Id.* at 2.

• On January 2, 2018, the Court granted the requested extension, *see* Dkt. No. 12, and Medicredit filed its Defendant's Original Answer on January 5, 2018, *see* Dkt. No. 13.

• On January 30, 2018, counsel from Sulaiman filed the parties' Joint Status Report, setting out their joint proposed discovery plan and dates for a scheduling order following counsel's Federal Rule of Civil Procedure 26(f) conference. *See* Dkt. No. 17.

- On February 1, 2018, the Court entered its Scheduling Order, setting the case for trial on March 18, 2019 and setting a November 19, 2018 deadline for completion of discovery. *See* Dkt. No. 18.

- On February 8, 2018, Sulaiman served on Medicredit's counsel Plaintiff's Interrogatories to Defendant, Plaintiff's Requests to Produce to Defendant, and Plaintiff's Requests for Admission. *See* Dkt. No. 34-1.

- On March 23, 2018, Sulaiman made its first attempt to contact Barrett since December 1, 2017, when someone from Sulaiman attempted to call Barrett by phone but received no response. Someone from Sulaiman then sent Barrett an email advising her as to the status of the case. *See* Dkt. No. 38-1 at 5.

- On March 28, 2018, Medicredit's counsel filed the parties' Joint Motion for Entry of Qualified Protective Order, asking the "Court for the entry of a qualified protective order that complies with the terms of HIPAA and regulations promulgated thereto in the form submitted herewith," Dkt. No. 21 at 1, which the Court granted on March 29, 2018, *see* Dkt. No. 22.

- Sulaiman next attempted to contact Barrett on July 24, 2018, when someone from Sulaiman attempted to call Barrett by phone but Barrett did not answer and someone from Sulaiman then sent Barrett a follow-up email. *See* Dkt. No. 38-1 at 5.

- On September 26, 2018, Medicredit served Barrett, through her counsel, with its written discovery requests. *See* Dkt. No. 38-1 at 5.

- That same day, Sulaiman made its next attempt to contact Barrett, when someone from Sulaiman called Barrett by phone, resulting in leaving a voicemail asking Barrett for a return call. *See* Dkt. No. 38-1 at 5.

- On October 17, 2018, Medicredit's counsel filed the parties' Joint Motion for Extension of Time to Complete Mediation, reporting that "the parties have exchanged disclosures and each party has issued written discovery requests"; "Defendant has responded to Plaintiff's discovery requests"; "Plaintiff's responses to Defendant's written discovery requests are currently due October 26, 2018"; and that "[t]he parties have discussed the potential for settlement" but "have determined that resolution is unlikely at this stage and that mediation would not be fruitful at this time" although "[t]he parties intend to re-evaluate that likelihood after the close of discovery"; and asking the Court "to modify the scheduling order and extend the mediation deadline to a time approximately 60 days after the discovery cutoff." Dkt. No. 23 at 1-2.

- The Court granted the Joint Motion for Extension of Time to Complete Mediation [Dkt. No. 23] on October 18, 2018 and ordered "the parties to complete mediation on or before January 18, 2019." Dkt. No. 24.

- "On October 25, 2018, Sulaiman again attempted to contact [Barrett] via phone. During this phone call, an unknown third party answered the phone and advised that the phone number provided to Sulaiman by [Barrett] no longer belonged to [Barrett]. In response to this information, Sulaiman sent an e-mail to [Barrett] advising that [Sulaiman] had lost contact with her and needed a response. A letter evincing the same was also sent to [Barrett's] last known address." Dkt. No. 38-1 at 5-6.

- "On October 26, 2018, Sulaiman gathered a LexisNexis Accurint Report regarding [Barrett] to get more information in an effort to address [Barrett's] unresponsiveness. The Accurint Report provided several alternate phone numbers as being potentially related to [Barrett]. Sulaiman contacted these phone numbers in an effort to reach [Barrett], to no avail. Additionally, Accurint Reports include information publicly available regarding whether a particular party is deceased. The October 26, 2018 Accurint Report did not demonstrate that [Barrett] was deceased; as such, Sulaiman continued its efforts to make contact with [Barrett]. Sulaiman also sent an additional letter to [Barrett's] address advising of [its] inability to contact her. Further, Sulaiman began searching social media to glean information regarding [Barrett's] unresponsiveness." Dkt. No. 38-1 at 6. But, according to Mr. Volheim, "at that time, no information was readily available explaining why [Barrett] was unresponsive." *Id*.

- On October 26, 2018, Sulaiman responded to Medicredit's written discovery requests. *See* Dkt. No. 38-1 at 6; Dkt. No. 34-2.

- According to Mr. Volheim, Sulaiman crafted "[t]he answers and objections to Defendant's written discovery requests ... from the extensive information provided by [Barrett] to Sulaiman back in November 2017," and "[t]he answers and objections were not signed by [Barrett] nor were they represented as being verified by" her. Dkt. No. 38-1 at 6.

- "On November 7, 2018, Sulaiman sent yet another letter to [Barrett's] last known address, as well as an e-mail, again highlighting [Sulaiman's] repeated inability to contact [Barrett]." Dkt. No. 38-1 at 6.

- "On November 8, 2018, Sulaiman sent another letter to [Barrett's] last known address via 2-day mail, as well as an e-mail, again highlighting [Sulaiman's]

repeated inability to contact [Barrett]." Dkt. No. 38-1 at 6.

- On November 14, 2018, Medicredit's counsel filed the parties' Stipulation and Joint Motion for Extension of Time to Complete Discovery, reporting that "the parties have exchanged disclosures and the parties have engaged in written discovery with each party having responded to the other's requests"; "[t]he discovery cutoff is currently November 19, 2018"; "[d]ue to scheduling conflicts, the parties are in need of a short extension of time to complete discovery, specifically to allow for the depositions of each party"; "[t]rial is currently set for the Court's four week docket commencing March 18, 2019"; "[t]he parties hereby stipulate and agree to extend the discovery deadline by eighteen (18) days, to and including December 7, 2018," but "do not seek to modify the dispositive motion, challenges to experts, or pretrial submission deadlines, and the requested extension of the discovery cutoff will not affect those deadlines"; and "[t]he parties, therefore, request that this Court extend the discovery deadline to December 7, 2018." Dkt. No. 27 at 1-2.

- The Court granted the Joint Motion for Extension of Time to Complete Discovery [Dkt. No. 27] on November 15, 2018 and "extend[ed] the discovery deadline to December 7, 2018." Dkt. No. 28.

- In late November 2018, Barrett's counsel and Medicredit's counsel discussed and ultimately agreed on a date for Barrett's deposition, and Medicredit served a notice of Plaintiff's deposition for December 6, 2018. *See* Dkt. No. 34 at 4; Dkt. Nos. 34-3 & 34-4.

- During a call on November 30, 2018 with Medicredit's counsel, Barrett's counsel conveyed a settlement demand of $4,000.00. *See* Dkt. No. 34 at 4.

- Barrett's counsel and Medicredit's counsel had also scheduled a mediation, as required by the Court, to take place on December 10, 2018. *See* Dkt. No. 34 at 5.

- "On or about December 4, 2018, Sulaiman began going through [Barrett's] call records, and began contacting numbers appearing frequently in the logs in an effort to get further information regarding [Barrett]. During one such call, Sulaiman spoke with an individual identifying himself as the father of at least on of [Barrett's] children – JB Barrett []. This individual informed Sulaiman that [Barrett] had passed away." Dkt. No. 38-1 at 7.

- "Sulaiman then visited [JB Barrett's] Facebook page and came across a social media post suggesting that [Barrett] had passed away on December 18, 2017." Dkt. No. 38-1 at 7.

- "On December 4, 2018, at approximately 4:50 p.m. Mountain time, two days before [Barrett's] deposition was to take place, Plaintiff's counsel called undersigned counsel to advise that there was a likelihood that [Barrett] would not show up to her deposition because Plaintiff's counsel had been unable to reach her to confirm with her. [Medicredit's] counsel then advised Plaintiff's counsel by email at 6:13 p.m. that if Plaintiff's counsel could not confirm that [Barrett] would appear, the case would need to be dismissed without prejudice. *See* email dated December 4, 2018, attached as Exhibit F. Plaintiff's counsel responded approximately seven minutes later to advise that his office 'believe[d] she has passed away...' *See* email dated December 4, 2018, attached as Exhibit G." Dkt. No. 34 at 4; *see also* Dkt. Nos. 34-6 & 34-7; Dkt. No. 38-1 at 7 ("Immediately after coming across this information [in a social media post suggesting that [Barrett] had passed away on December 18, 2017], Sulaiman contacted Defendant's counsel and advised them of [Barrett's] purported demise. .... [I]t was Sulaiman who affirmatively notified Defendant of the potential issue.").

- According to Mr. Volheim, "[a]t no point were any efforts made to continue prosecuting this case after Sulaiman became aware that [Barrett] had seemingly passed away," and "there was no indication, until December 4, 2018, that [Barrett's] unresponsiveness was the result of [Barrett's] death," where "it has been [Mr. Volheim's] experience that the explanation for a consumer's failure to respond rarely, if ever, is a result of that party's death" and where his "experience suggests that lapses in communication between Sulaiman and its clients are frequently the result of any number of reasons, including but not limited to: a party's changing contact information without informing Sulaiman, moving without informing Sulaiman of their new address, dealing with a family, personal, and/or medical emergency, amongst others." Dkt. No. 38-1 at 7.

- On December 5, 2018, Medicredit's counsel filed a Motion to Stay or in the Alternative Vacate all Pending Deadlines, explaining:

  CERTIFICATE OF CONFERENCE: Pursuant to Local Rule 7.1, undersigned counsel conferred with Nathan Volheim who indicated that he does not oppose the relief requested in this motion.

  Contemporaneous with the filing of this Motion, Medicredit filed Suggestions of Death noting on the record that Plaintiff Demetria Marie Barrett passed away on or about December 18, 2017. As such, if no motion to substitute is filed by Monday, March 4, 2019, this case must be dismissed. F.R.C.P. 25(a)(1).

  Medicredit had previously noticed the deposition of Plaintiff for December 6, 2018, but on December 4, 2018, counsel for Plaintiff indicated that he believed

she had passed away.

        The current deadline for completion of discovery is December 7, 2018.

        The dispositive motion deadline is December 18, 2018. *See* Doc. 18.

        The parties' pre-trial materials are also due on March 4, 2019; the pre-trial conference is set for March 15, 2019 (with the parties exchanging exhibits by March 13, 2019); and trial is scheduled to commence March 18, 2019. *See* Doc. 18.

        Because Plaintiff is deceased, counsel for Plaintiff no longer has an attorney-client relationship with the decedent and therefore cannot participate in this case. *See Murphy v. Murphy*, 21 S.W.3d 797, 798 (Tx. App. 2000) ("...it is well established that an attorney-client relationship terminates upon the death of the client.").

        For the same reason, Defendant cannot conduct further discovery on Plaintiff.

        And because nearly one year has passed since Plaintiff's death with no estate or other probate matter opened for her in that and without anyone seeking to substitute in this case, it is highly unlikely that any party will timely be substituted. As such, the most likely outcome of this case is that it will be dismissed pursuant to F.R.C.P. 25(a)(1).

        Accordingly, good cause under F.R.C.P. 16(b)(4) exists to stay or vacate all pending deadlines, including the pre-trial conference and trial date. Doing so will save Defendant considerable cost and expense to prepare a dispositive motion and to prepare for a trial in a case that will not be able to proceed.

        This Court, therefore, should stay, or in the alternative vacate, all pending deadlines, including the pre-trial conference and trial date.

Dkt. No. 31 at 1-2.

•     On December 5, 2018, Medicredit's counsel also filed a Suggestions of Death, explaining:

        Medicredit suggests that on or about December 18, 2017, Plaintiff Demetria Marie Barrett died.

        Based upon undersigned counsel's research, no estate or other probate matter was opened for Mr. Barrett.

        However, a Facebook video posted on Wednesday, December 20, 2017, by an "Octavia Fussell a/k/a Shelia Parson" states that "Demetria Marie Parsons Barrett" died on "Monday evening", which date was December 18, 2017. The individual in that video also states that "Demetria Marie Parsons Barrett" lived in Texas.

        Defendant also knows Plaintiff to have gone by the name "Demetria Parsons Barrett."

Dkt. No. 32 at 1 (footnote omitted).

- On December 6, 2018, the Court granted the Motion to Stay or in the Alternative Vacate all Pending Deadlines [Dkt. No. 31] and "ordered that all pending deadlines in this case, including the discovery deadline, dispositive motion deadline, pre-trial conference, and trial date, are stay indefinitely pending further action by the Court." Dkt. No. 33 at 1.

- On December 26, 2018, Medicredit filed its Motion for Sanctions. *See* Dkt. No. 35.

## Legal Standards

A court may impose sanctions against "[a]ny attorney ... who ... multiplies the proceedings in any case unreasonably and vexatiously" in the form of "excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 ("Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.").

To impose sanctions against an attorney under Section 1927, the court must find that the sanctioned attorney multiplied the proceedings both "unreasonably" and "vexatiously." *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 526 (5th Cir. 2002). Proving that a counsel's behavior was both "vexatious" and "unreasonable" requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. Gen. Motors Corp.*, 153 F.3d 242, 246 (5th Cir. 1992). Section 1927 "sanctions may not be imposed for mere negligence on the part of counsel." *Baulch v.*

*Johns*, 70 F.3d 813, 817 (5th Cir. 1995). The United States Court of Appeals has explained that

> [28 U.S.C.] § 1927, unlike [Federal Rule of Civil Procedure] 11, is not about mere negligence. *See Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir.2003). Rule 11, with its lower standard of culpability that permits sanctions for failure to conduct a reasonable inquiry, provides a "safe harbor" during which an attorney may correct his actions by withdrawing or correcting the challenged paper, claim, defense, contention or denial. *See* FED. R. CIV. P. 11(c)(2). Here, Vanderhoff's counsel took corrective action once his good faith belief in his client's allegations was challenged by the lack of documentary evidence – he did not further multiply the litigation nor persist in a meritless claim. The whole point of Rule 11's "safe harbor" is to allow an attorney who is mistaken about the merits of his claim to withdraw it. Section 1927, by contrast, is about the intentionally wrongful or reckless counsel, not the one who is merely negligent or lacking in diligence.

*Vanderhoff v. Pacheco*, 344 F. App'x 22, 28 (5th Cir. 2009).

Sanctions under Section 1927 are "'punitive in nature and require clear and convincing evidence that sanctions are justified.'" *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 872 (5th Cir. 2014) (quoting *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 694 (5th Cir. 2010)). Because of its punitive nature, Section 1927 is construed strictly, *see Proctor & Gamble Co.*, 280 F.3d at 525, and in favor of the sanctioned party, *see FDIC v. Conner*, 20 F.3d 1376, 1384 (5th Cir. 1994). Punishment under Section 1927 is "'sparingly applied.'" *Lawyer's Title Ins. Corp.*, 739 F.3d at 872 (quoting *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 535 (5th Cir. 1996)). Section 1927 sanctions "'should be employed only in instances evidencing a serious and standard disregard for the orderly process of justice, lest the legitimate zeal of an attorney in representing [a] client [be] dampened.'" *Lawyers Title*, 739 F.3d

at 872 (quoting *Conner*, 20 F.3d at 1384).

Section 1927 "creates liability only for *excess* costs, expenses and attorneys' fees reasonably incurred because of the attorney's unreasonable and vexatious multiplication of the proceedings," *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991) (emphasis in original), and only authorizes shifting fees and costs that are associated with "the persistent prosecution of a meritless claim," *id.* at 345; *Proctor & Gamble Co.*, 280 F.3d at 525; *accord Browning*, 931 F.2d at 346 ("Section 1927 is aimed at specific conduct and claims. It authorizes awards only for actual fees and costs which proscribed conduct has caused."). The courts often use repeated filings, despite warnings from the court, or other proof of excessive litigiousness to justify sanctions. *See Nat'l Ass'n of Gov't Employees v. Nat'l Fed'n of Fed. Employees*, 844 F.2d 216, 224 (5th Cir. 1988)."'An unsuccessful claim is not necessarily actionable.'" *Lawyer's Title Ins. Corp.*, 739 F.3d at 872 (quoting *Hogue v. Royse City, Tex.*, 939 F.2d 1249, 1256 (5th Cir. 1991)).

And, "[t]o shift the entire cost of defense, the claimant must prove, by clear and convincing evidence, that every facet of the litigation was patently meritless, and counsel must have lacked a reason to file the suit and must wrongfully have persisted in its prosecution through discovery, pre-trial motions, and trial." *Proctor & Gamble Co.*, 280 F.3d at 526 (citations omitted); *accord Browning*, 931 F.2d at 344-45 ("By its terms this statute does not authorize the wholesale reimbursement of a party for all of its attorneys' fees or for the total costs of the litigation. .... Except when the entire course of proceedings were unwarranted and should neither have been commenced nor

persisted in, an award under § 1927 may not shift the entire financial burden of an action's defense." (citations omitted)).

In awarding fees under Section 1927, the court is required to "(1) identify sanctionable conduct and distinguish it from the reasons for deciding the case on the merits, (2) link the sanctionable conduct to the size of the sanctions, and (3) differentiate between sanctions awarded under different statutes." *Proctor & Gamble Co.*, 280 F.3d at 526; *see also Browning*, 931 F.2d at 346 ("On remand the district court is directed to identify the specific conduct of [the attorney to be sanctioned] which unreasonably and vexatiously multiplied the proceedings. The district court must then determine the excess fees and costs incurred by the opponents in meeting such claims. .... The district court is directed to permit any part of the controversy to be resolved by stipulation of the attorneys and proof to be offered by their testimony (or by affidavit if the court so directs). The time and expense incurred in work reasonably done to meet any and all meritless claims and actions should be detailed for the trial court." (citations omitted)).

## Analysis

In the Sanctions Motion, Medicredit asserts that, "[d]espite [Barrett's] death, Plaintiff's counsel allowed this case to proceed without ever notifying Medicredit or exercising any diligence to determine why [Barrett] had become unresponsive." Dkt. No. 34 at 2. Medicredit explains that,

> [b]ecause Plaintiff's counsel failed to diligently determine why his client had been unresponsive and had not actively participated in this case for nearly a year, he showed "reckless disregard of" his duties to this Court.

An attorney admitted to practice in this Court is subject to the Texas Disciplinary Rules of Professional Conduct ("Disciplinary Rules"). *See* Local Rule 83.8(e). Among the duties the Disciplinary Rules impose are a duty to minimize the burdens and delays of litigation. *See* Texas Disciplinary Rules of Professional Conduct Rule 3.02. That Disciplinary Rule mandates that a "lawyer shall not take a position that ... unreasonably delays resolution of the matter." *Id.* The Disciplinary Rules also require a lawyer to "keep a client reasonably informed about the status of a matter..." Texas Disciplinary Rules of Professional Conduct Rule 1.03. An attorney loses his authority to pursue a case on a client's behalf when the client dies because the attorney-client relationship terminates upon the death of the client. *See Murphy v. Murphy*, 21 S.W.3d 797, 798 (Tx. App. 2000).

When reading these various rules together, it becomes apparent that a lawyer has a duty not only to communicate with a client, but also to reasonably investigate why his or her client has become unresponsive. This duty includes investigating whether the client may have died. In this case, had Plaintiff's counsel reasonably and diligently communicated with his client, he would have or should have known early on that she was unresponsive.

Here, Plaintiff's counsel failed to carry out that duty and that failure resulted in an unreasonable delay of the resolution of this case and "unreasonably and vexatiously" multiplied the proceedings in this case. Plaintiff passed away on December 18, 2017. Shortly thereafter, on January 5, 2018, Medicredit filed its Answer. *See* Doc. 13. At this time, under Plaintiff's counsel's duties, he should have communicated this fact to his client and become aware of his client's unresponsiveness. On January 5, 2018, at the latest, Plaintiff's counsel should have begun investigating Plaintiff's unresponsiveness and determined she had passed away.

Plaintiff's counsel should have realized his client had become unresponsive when this Court entered its Scheduling Order on February 1, 2018, setting the trial date for March 18, 2019. *See* Doc. 18 at p. 1. Under Disciplinary Rule 1.03, Plaintiff's counsel had a duty to advise Plaintiff of this trial date to assure she would be present at trial in the event this case proceeded that far. To fulfill this duty, Plaintiff's counsel would have needed to solicit an affirmative response and follow-up if one was not forthcoming. So at the absolute latest, Plaintiff's counsel should have been aware that his client was not responsive to his communications, investigated why, and determined that Plaintiff had passed.

Had Plaintiff's counsel diligently investigated his client's unresponsiveness, he would have quickly determined that Plaintiff died

on December 18, 2017. Notably, Plaintiff's sister posted a video to her personal Facebook account on Wednesday, December 20, 2017, stating that Plaintiff had died on "Monday", most likely meaning December 18, 2017. Medicredit's counsel was able to locate that video by viewing the limited version of Plaintiff's Facebook account listing her sister as a relative. Because Plaintiff's sister's account is set to publicly display most, if not all of, her posts, Medicredit's counsel was able to view the video. Medicredit's counsel was able to accomplish this task in only a couple of hours after being notified of the death. Had Plaintiff's counsel reasonably investigated why his client had become unresponsive, he would have realized she passed away before Medicredit even filed its Answer. By failing to do so, Plaintiff's counsel showed reckless disregard for his duties to this Court.

Not only did Plaintiff's counsel show reckless disregard for his duty to investigate his client's unresponsiveness, he showed reckless disregard for his duties under the Federal Rules of Civil Procedure. Under those Rules, when an attorney signs a "pleading, written motion, or other paper", he represents that "the factual contentions" are true to the "best of [his] knowledge, information, and belief..." *See* F.R.C.P. 11(b)(3). Plaintiff's counsel in this case prepared, served, and signed interrogatory answers purportedly on behalf of his deceased client. In response to Medicredit's interrogatories, Plaintiff's counsel signed answers that represented that Plaintiff had assisted in the preparation of those answers and would be testifying at trial. *See* Exhibit B at pp. 1-2. Plaintiff, however, could not possibly have done so as she passed 18 days after the Complaint in this case was filed and 312 days before counsel signed the responses. Plaintiff's counsel thus showed reckless disregard for his duties to this Court such that sanctions under section 1927 are warranted.

....

Given that Plaintiff passed away just 18 days after the Complaint was filed, thereby terminating the attorney-client relationship, this Court should award Medicredit its full cost of defense as "every facet of [this] litigation was patently meritless" and Plaintiff's counsel "wrongfully...persisted in its prosecution." *Procter & Gamble*, 280 F.3d at 526. When a client passes away, the attorney-client relationship immediately terminates. *See Murphy*, 21 S.W.3d at 798 ("...it is well established that an attorney-client relationship terminates upon the death of the client."). Absent being retained by Plaintiff's estate, therefore, Plaintiff's counsel had no authority to participate in this case past December 18, 2017.

Despite this lack of authority, Plaintiff's counsel proceeded to make a settlement demand, propound discovery requests on Medicredit,

respond to Medicredit's discovery requests, set a deposition for Plaintiff, and schedule mediation. Each of these actions, therefore, was "patently meritless". Most importantly, because Plaintiff's counsel did not have the authority of any client to continue prosecuting this action, he also "wrongfully...persisted in its prosecution" throughout the entirety of the proceeding to date. This Court should thus award Medicredit all of its attorney fees and costs incurred throughout the entirety of this litigation.
....

    Plaintiff's counsel unreasonably and vexatiously multiplied the proceedings in this case because of his reckless disregard for his duties to this Court. Had he diligently and reasonably communicated with Plaintiff and investigated why she was not responsive to any communications in this case, he would have determined, very early on in this case, that she had passed away on December 18, 2017. Because he failed to do so, Medicredit was forced to expend considerable sums defending this case. Medicredit incurred these costs of defense despite the fact Plaintiff's counsel had no authority to prosecute this case after December 18, 2017; in other words, every facet of this case was patently meritless and Plaintiff's counsel wrongfully persisted in prosecuting this case after December 18, 2017.

Dkt. No. 34 at 6-9 (footnotes omitted).

Sulaiman opposes sanctions, asserting first – before Texas Health and Human Services had provided, at Medicredit's request, a "Verification of Death" of Barrett, *see* Dkt. No. 42 at 3 – that Medicredit "has not offered any definitive proof that Plaintiff has, in fact, passed away" and that, to the extent it appears as though Plaintiff has passed away, Sulaiman immediately notified Defendant of Plaintiff's purported death upon becoming aware of information suggesting she had perished." Dkt. No. 38 at 1 (emphasis omitted). According to Sulaiman, "[t]he record reflects the extensive communications Sulaiman made or attempted to make with [Barrett] throughout the life of the case," and "any failure of Sulaiman to dig deeper into the reasoning behind [Barrett's] lack of responsiveness to its communication efforts was not the result of

unreasonable or vexatious conduct, but instead a result of the procedural posture of the case in combination with the lack of readily available information highlighting [Barrett's] death." *Id.* at 1-2. Sulaiman contends that its "conduct throughout this litigation does not rise to the level of unreasonable and vexatious conduct contemplated as sanctionable under § 1927," where

> Sulaiman did not become aware of Plaintiff's death until December 4, 2018, and Defendant did not become aware of Plaintiff's death until being told by Sulaiman. Sul. App. at 7, ¶ 23, Ex. A, NCV Aff. Sulaiman attempted to communicate with Plaintiff extensively throughout the litigation, including placing a series of phone calls, e-mails, and sending letters to Plaintiff's last known address. *Id.* at 4-7, ¶¶ 4-20. Although these communication efforts were not responded to, there was nothing to suggest Plaintiff's unresponsiveness was the result of her death, nor was there any readily available information illustrating Plaintiff's demise. *Id.* Absent information to the contrary, Sulaiman prosecuted this case in what it perceived to be the best interest of its client, notwithstanding her lack of responsiveness.
>
> Furthermore, the procedural posture of this matter provides context for the length of time Plaintiff was unresponsive. Sulaiman promptly issued discovery requests after discovery was open in this matter, back on February 8, 2018 – within 2 months of Plaintiff's purported death – at which point it could not reasonably have been clear that Plaintiff had passed away. *See id.* After Defendant responded to these requests, the case sat idle for nearly 6 months, during which time Defendant did nothing to prompt Sulaiman to contact Plaintiff regarding the case. Once Defendant issued its discovery requests in September 2018, Sulaiman ramped up its efforts to reach out to Plaintiff regarding her case. *Id.* at 5-6, ¶¶ 13-16 . Sulaiman even ran a LexisNexis Accurint report[2] in an effort to reach Plaintiff, and this Accurint Report represented that Plaintiff was still alive. *Id.* at 6, ¶ 16. Nevertheless, had Defendant been more interested in promptly establishing its defense in this case, it is likely that Plaintiff's purported death would have been uncovered much earlier. As such, part of the length of time that Plaintiff was unresponsive is a result of the time in which Defendant allowed this case to remain idle.
>
> Additionally, there was nothing false in the responses to Defendant's discovery requests prepared by Sulaiman. Any information contained in the responses was the by-product of Sulaiman's client intake

process and information provided to Sulaiman by Plaintiff prior to the filing of this case. *Id.* at 3-4, ¶¶ 4-7.

....

Defendant's Motion is premised entirely on conclusory statements that Sulaiman's conduct showed a "reckless disregard of" its duties to the Court. However, Defendant's Motion completely fails to provide any analysis on how Sulaiman's conduct was both unreasonable and vexatious. Defendant's failure in this regard dooms its Motion on its face.

Nevertheless, the record in this matter demonstrates that Sulaiman did not recklessly disregard any of its duties to the Court. Defendant's Motion seeks to cobble together various Texas Rules of Professional Conduct ("Texas Rules") – specifically, Rules 1.03 and 3.02 – in combination with the notion that an attorney-client relationship terminates upon the death of a client, to craft a purported "duty" that an attorney has to investigate "whether the client may have died." While Sulaiman acknowledges the importance of its duties in communicating with clients and of not taking a position in litigation that results in an unreasonable delay, Defendant's Motion and its reliance on a purported duty to investigate whether a client has died seeks to impose a duty on Sulaiman that is not explicitly found or outlined in any authority.

Regardless, cognizant of the importance of maintaining effective communication with its clients, Sulaiman recognizes the importance to the Court of ensuring that its clients are still alive and able to prosecute their case. This is why the evidence in this matter illustrates that Sulaiman did not unreasonably or vexatiously fail to uphold any duty to ensure that its client was alive. The record shows that, throughout the life of this case, Sulaiman engaged in numerous and repeated attempts to contact Plaintiff. Even though these attempts often went without a response, for at least a certain period of time, there was nothing to indicate that Plaintiff's unresponsiveness was anything other than the typical unresponsiveness that occurs when representing consumers. Sul. App. at 7-8, ¶¶ 26-28, Ex. A, NCV Aff. This is why, as the communications progressed, Sulaiman began sending letters in addition to phone calls and e-mail, all in an effort to broaden our ability to reach Plaintiff before taking any action detrimental to our client's interests. *See id.* Once the case progressed to a point where Plaintiff's participation became necessary – and thus her unresponsiveness more troubling – further efforts were made to investigate Plaintiff's situation. Such efforts included running an Accurint Report. *See id.* Even this Accurint Report identified Plaintiff as still living. *Id.* Furthermore, had Defendant went about engaging in discovery earlier than two months before the discovery deadline, it is likely that Plaintiff's purported death would have been uncovered much earlier in the life of the case.

Therefore, the evidence on record illustrates that Sulaiman reasonably communicated or attempted to communicate with Plaintiff when there were relevant updates to the case, and that upon reaching a point where her unresponsiveness became troubling, Sulaiman delved deeper to investigate her unresponsiveness. Thus, Sulaiman fulfilled any duty to reasonably investigate whether its client was still alive. In the event the Court finds that Sulaiman was derelict in this duty, the record is nevertheless completely devoid of any indication that Sulaiman's purported failure was unreasonable, vexatious, or constituted a reckless disregard of its duties. At absolute worst, Sulaiman's conduct and purported failure to uphold this duty was the result of carelessness or negligence, and thus does not rise to the level of sanctionable conduct under § 1927. *See, United States ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 761 F. Supp. 2d 442, n. 19 (W.D. Tex. 2010) ("The conduct may have been negligent, but that is irrelevant to the § 1927 analysis.") (citing *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003)).

Dkt. No. 38 at 3-4, 5-7 (footnote and emphasis omitted).

Sulaiman further responds to Medicredit's Sanctions Motion's "point[ing] to three instances where Sulaiman purportedly recklessly disregarded its duties to the court," "[t]he first two deal[ing] with Sulaiman's purported failure to investigate Plaintiff's death, whereas the last instance points to Sulaiman's purported failure to adhere to the Federal Rules of Civil Procedure":

Defendant first points to January 5, 2018, as a date where Sulaiman should have begun investigating Plaintiff's lack of responsiveness. Defendant suggests that, by virtue of filing their Answer, Sulaiman was obligated to inform Plaintiff that an Answer had been filed. However, there is no rule or provision that requires counsel to inform its client of every filing that occurs in a federal court case, let alone a rule that requires counsel to follow up immediately or engage in a proof of life investigation if a client is not responsive. In fact, given the volume of documents that get filed in federal court cases, it would be entirely unreasonable to inform clients of each such instance, let alone inform clients of these instances and then engage in a proof of life investigation if a client does not respond (especially when there's no other indication that the client has died). As such, Defendant's attempt to establish

January 5, 2018 as a specific time where Sulaiman began its purportedly unreasonable and vexatious conduct is meritless.

....

Defendant next turns to February 1, 2018, the date the Court entered the Scheduling Order, as a date where Sulaiman's purportedly unreasonable and vexatious conduct began. Again, there is no affirmative duty, upon a Scheduling Order being entered, to communicate that fact to a client and determine whether that client will be able to attend the trial. While such would be best practice, it is not required and is not a dereliction of any duty to fail to immediately provide this information. Furthermore, even if such a communication was required, there is nothing that suggests a lack of responsiveness to such a communication must result in immediate efforts to determine whether a client is alive. As such, there is no unreasonable or vexatious conduct stemming from Sulaiman's purported failure to investigate whether Plaintiff was alive after the Scheduling Order was entered in this matter.

....

Defendant then delves into Sulaiman's purported lack of diligence in investigating Plaintiff's unresponsiveness. Defendant's argument suggests that discovering Plaintiff's death was something that should have been readily apparent to Sulaiman with "reasonable" diligence. However, Defendant's argument is incorrect. As early as October 26, 2018, Sulaiman investigated social media to gather more information about Plaintiff, although nothing was readily apparent. Sul. App. at 6, ¶ 16, Ex. A, NCV Aff. Furthermore, the October 26 Accurint Report suggested that Plaintiff was still alive. *Id.* It was only upon Sulaiman going through Plaintiff's call records, locating an individual that appeared frequently on those logs, contacting that individual inquiring about Plaintiff, receiving information that Plaintiff had died, and subsequently searching the social media page of the individual providing the information regarding Plaintiff's demise, that Sulaiman was able to ascertain the likelihood that Plaintiff had passed away. *Id.* at 7, ¶¶ 21-22. Further, even knowing that Plaintiff had passed away, it took Defendant two hours to locate a post – on Plaintiff's sister's social media page – discussing Plaintiff's death. As such, the record reflects that ascertaining information regarding Plaintiff's demise was a time consuming process, one which Plaintiff could not reasonably be expected to engage in every time Plaintiff failed to respond to a particular communication. Therefore, the difficulty with which Plaintiff's death was ascertainable further illustrates the absence of unreasonable or vexatious conduct stemming from Sulaiman's purported failure to investigate its client's unresponsiveness.

....

Finally, Defendant asserts that Sulaiman acted with reckless disregard of its duties under the Federal Rules of Civil Procedure when it provided interrogatory responses with alleged falsehoods. However, Defendant's argument overlooks the fact that the answers to its interrogatories were truthful to the best of Sulaiman's knowledge at the time the responses were provided. All of the information provided in the interrogatory responses was derived from the extensive information Plaintiff provided to Sulaiman through the client intake process. Sul. App. at 4-5, ¶¶ 4-7, Ex. A, NCV Aff. As such, Plaintiff did assist in providing information responsive to Defendant's discovery requests. Furthermore, at the time the interrogatory responses were provided, there had not yet been any indication that Plaintiff had passed away. *See generally, id.* As such, to the best of Sulaiman's knowledge, Plaintiff still intended to testify regarding the allegations contained in the complaint.

In sum, Sulaiman did not act unreasonably or vexatiously in its investigation in to the nature of Plaintiff's unresponsiveness, nor did Sulaiman recklessly disregard any of its duties to the Court. Viewing Sulaiman's handling of this matter in the worst light possible, its conduct as it relates to investigating Plaintiff's lack of responsiveness, at most, amounts to a certain amount of carelessness on the part of Sulaiman, but in no way suggests unreasonable or vexatious conduct nor a reckless disregard of its duties to the Court. Furthermore, the truthful representations in the interrogatory responses are not a valid basis for sanctions. Therefore, Defendant's Motion has failed to establish that Sulaiman's conduct was unreasonable and vexatious, and further fails to identify any bad faith or reckless disregard of Sulaiman's duty to the court; thus, Defendant's Motion must be denied in its entirety.

Dkt. No. 38 at 7-10 (emphasis omitted). And Sulaiman argues that,

[u]nsurprisingly, Defendant's Motion fails to point to any analogous case law where a court issued sanctions against a party based on facts similar to the instant matter. This is likely because no such authority exists. Instead, a review of the case law surrounding a party seeking sanctions as a result of continued prosecution of a case after a client has passed away illustrates that Sulaiman has not engaged in conduct that is sanctionable under § 1927.

The run of cases addressing this issue underscore that courts will generally only award sanctions for continued prosecution of a case when an attorney has knowledge of their client's death, yet they continue prosecuting the case without disclosing this information to opposing counsel or the court. *See e.g.*, *Hubbard v. Plaza Bonita, L.P.*, 630 F. App'x 681 (9th Cir 2015) (imposing sanction against counsel who actively

concealed his client's death.); *Virzi v. Grand Trunk Warehouse & Cold Storage, Co.*, 571 F. Supp. 507 (E.D. Mi. 1983) (issuing sanctions against a party that failed to disclose that its client had passed away, noting that attorneys owe a duty to inform opposing counsel and the court about his client's death.); *Soi Quay Hoang v. Worldwide Asset Purchasing, LLC*, 2010 U.S. Dist. LEXIS 136420 (S.D. Ill. Dec. 27, 2010) (same); *In re Pagan*, 2017 Bankr. LEXIS 332 (D.P.R. Jan. 30, 2017) (same). In the instant matter, the record reflects that, upon becoming aware of Plaintiff's purported death, Sulaiman immediately notified Defendant of this fact. Because Sulaiman did not continue prosecuting this case with knowledge of Plaintiff's demise, its conduct is not properly sanctionable under § 1927.

....

Defendant's argument as to why it is entitled to the entirety of its fees in this matter is meritless. "Section 1927 is aimed at specific conduct and claims. It authorizes awards only for actual fees and costs which proscribed conduct has caused." *Browning*, 931 F.2d at 346 (emphasis added). As such, for the Court to impose sanctions against Plaintiff under § 1927, Defendant's purportedly excess fees must come about as a result Sulaiman's purportedly vexatious and unreasonable conduct.

Defendant does not, and cannot, assert that Sulaiman acted vexatiously or unreasonably in filing this case, as Plaintiff was still alive when the case was filed. As discussed above, the only purportedly vexatious and unreasonable conduct identified in Defendant's Motion stems from: (1) Sulaiman's purported failure to sufficiently investigate Plaintiff's unresponsiveness; and (2) Sulaiman's purported failure to adhere to the Federal Rules of Civil Procedure.

For the former, in the event the Court finds Sulaiman acted unreasonably and vexatiously, Defendant would only be entitled to its fees from the time at which Sulaiman's failure to sufficiently investigate would be deemed unreasonable and vexatious. As such, some of amount of time would have to lapse between Plaintiff's first instance of unresponsiveness and a subsequent failure to adequately investigate such unresponsiveness in order to deem such conduct unreasonable and vexatious. As such, Defendant is not entitled to the entirety of its fees for Sulaiman's purported unreasonable and vexatious conduct in purportedly failing to investigate Plaintiff's unresponsiveness, and would instead be limited to those costs and fees from the point in time at which Sulaiman's purported failure would be deemed unreasonable and vexatious.

As to the latter, the purported reckless disregard for its duties under the Federal Rules of Civil Procedure would have occurred on October 26, 2018, when Sulaiman served its discovery responses. As such, in the event the Court finds such conduct to have unreasonably and

vexatiously multiplied the proceedings, Defendant would only be entitled to its costs and fees incurred since October 26, 2018.

Dkt. No. 38 at 10-12 (emphasis omitted).

Medicredit replies that,

[b]ecause it is undisputed that Sulaiman Law made only minimal efforts to contact Ms. Barrett and waited until the day her responses to Medicredit's discovery requests were due to attempt to locate her, Sulaiman Law showed reckless disregard for its ethical duties to this Court. Further, Sulaiman Law cannot credibly claim that Ms. Barrett is not deceased. Indeed, it was Sulaiman Law that affirmatively represented to undersigned counsel that Ms. Barrett had likely passed based on a conversation they had had with a close friend or relative. Further, Sulaiman Law has not presented any evidence that the video statement from Ms. Barrett's sister is incorrect. Indeed, other than a LexisNexis Accurint report, Sulaiman Law has not presented any evidence or argument that Ms. Barrett is still living. Most importantly, Medicredit has now received from Texas Health and Human Services the Verification of Death, which confirms Ms. Barrett, in fact, died on December 18, 2017. *See* Verification of Death, attached as Exhibit A; *see also* Doc. 41.

And on the substance of Sulaiman Law's arguments, while there is certainly no rule that states explicitly that an attorney has an affirmative duty to verify whether a client is alive, under the circumstances here, Sulaiman Law had a duty to investigate its client's lack of communication. That duty reasonably extends to attempting to ascertain whether she is alive or dead, especially given that the law plainly establishes that an attorney loses authority to act on the client's behalf upon the client's death. That is, Sulaiman Law was required to confirm that it continued to have authority to act on Ms. Barrett's behalf. Further, the efforts set forth in Mr. Volheim's affidavit show that Sulaiman Law's efforts were not reasonable under the circumstances; despite having heard no response from Ms. Barrett concerning important information in this case, Sulaiman Law indisputably did not attempt to communicate with Ms. Barrett for two-to-four months at a time. Indeed, because Ms. Barrett passed, Sulaiman Law did not have any authority to act on Ms. Barrett's behalf for almost the entirety of the life this lawsuit and thus Medicredit should be awarded its full cost of defense and this Court should grant Medicredit's Motion for Sanctions.
....

Sulaiman Law does not reasonably dispute the truth of the factual background Medicredit set forth in its Motion for Sanctions. Indeed, Plaintiff quibbles only with the light in which Medicredit cast those facts. However, it is undisputed that Sulaiman Law took the following actions after Ms. Barrett's death on December 18, 2017:

    a. Granting Medicredit an extension of its answer deadline;
    b. Preparing and filing a joint proposed scheduling order;
    c. Preparing and filing a joint ADR report;
    d. Executing a HIPAA-qualified protective order;
    e. Propounding discovery requests;
    f. Responding to written discovery requests;
    g. Making settlement offers;
    h. Scheduling the deposition of Ms. Barrett; and
    i. Scheduling the mediation of this case.

It is further undisputed that two individuals have independently confirmed Ms. Barrett's death: (1) the father of at least one of her children; and (2) Ms. Barrett's sister. Further, Texas Health and Human Services has provided, at Medicredit's request, a "Verification of Death", which states, a "death record was filed for DEMETRIA MARIE BARRETT Died [sic] on DECEMBER 18, 2017 in TERRANT County, Texas." *See* Exhibit A, at p. 2 (capitals in original). Therefore, it is not reasonably in dispute that Ms. Barrett passed away on December 18, 2017 – just 19 days after filing the instant suit.

....

Sulaiman Law's conduct in this case constituted reckless disregard of duties it owes to this Court. Indeed, Sulaiman Law does not dispute that, if their conduct was in reckless disregard of its duties to this Court, then sanctions are warranted under 28 U.S.C. § 1927. Sulaiman Law, however, incorrectly asserts that it did not engage in such reckless misconduct when the undisputed facts before the Court show that Sulaiman Law took significant action purportedly on Ms. Barrett's behalf after she had passed and Sulaiman Law thus lost all authority to act on her behalf.

Notably, Sulaiman Law does not dispute that it lost authority to act on Ms. Barrett's behalf immediately upon her death. Sulaiman Law also does not contest that it has ethical duties to communicate diligently with its clients and not to unreasonably delay the resolution of a case. Rather, Sulaiman Law argues only that it should not be sanctioned because it has not been proved beyond a reasonable doubt that Ms. Barrett in fact died on December 18, 2017 and because it contends it acted reasonably.

However, it is not reasonably in dispute that Ms. Barrett died on December 18, 2017. Two independent sources have confirmed that Ms.

Barrett died on that date. As Mr. Volheim recognizes in his own affidavit, the father of at least one of Ms. Barrett's children confirmed as much to him. Further, Sulaiman Law has not offered any evidence to show that the Facebook video posted by Ms. Barrett's own sister incorrectly states the date of Ms. Barrett's death. Finally, Texas Health and Human Services has confirmed that Ms. Barrett, in fact, perished on December 18, 2017. *See* Exhibit A at p. 2. Thus, there is no uncertainty concerning Ms. Barrett's death.

Further, on the facts Sulaiman Law itself presents, its conduct was in reckless disregard of its ethical duties to this Court and was not reasonably diligent under the circumstances. In fact, Sulaiman has admitted that it did not attempt to make any contacts with Ms. Barrett for nearly five months from December 1, 2017, until March 23, 2018. Most notably, this March 23, 2018, communication was nearly two months after this Court entered its scheduling order on February 1, 2018, which scheduling order set the trial of this case. Sulaiman Law undisputedly waited another four months until July 24, 2018, to attempt to contact Ms. Barrett again. After that, Sulaiman Law waited an additional two months to communicate with Ms. Barrett. One month later, on the due date for Ms. Barrett's responses to Medicredit's discovery requests, Sulaiman Law attempted contact with Ms. Barrett again. In other words, Sulaiman Law attempted to contact Ms. Barrett on just four occasions in approximately 10 months despite having heard no response from Ms. Barrett to any of those communications and despite the fact that those communications ostensibly contained time-sensitive details.

Under those circumstances, Sulaiman Law showed reckless disregard for its duties to this Court. While there is no explicit and affirmative duty to confirm that a client is alive, under the circumstances of this case, such a duty is implied because of the black letter law that an attorney loses authority to act on the client's behalf immediately upon the client's death. In other words, because an attorney knows, or is charged with knowing, that he loses authority to act on behalf of a client if the client dies, he implicitly has a duty to reasonably investigate whether the client may be dead under circumstances that would raise the suspicion of death in the mind of a reasonably prudent attorney.

Further, Sulaiman Law's duty to investigate whether Ms. Barrett died necessarily arose under the circumstances of this case. That duty arose because Sulaiman Law indisputably had a duty to diligently communicate with Ms. Barrett and not to unreasonably prolong this case. Specifically, Ms. Barrett went radio silent almost immediately after the filing of this lawsuit, and did not respond to any of Sulaiman Law's communications over the course of several months. At a minimum,

Sulaiman Law had an obligation to follow up, especially concerning the trial date and scheduling order, more than once every four or five months. And had it done so, it would have, or reasonably should have, realized that Ms. Barrett's unresponsiveness was due to something other than lack of engagement. In other words, if Sulaiman Law would have been more diligent in its communications and follow-ups with its client, it would have realized much earlier in this case that it needed to do more than simply call or send Ms. Barrett an email.

Sulaiman Law acknowledges as much when it asserts that it eventually began attempting to contact friends and relatives of Ms. Barrett and to view her social media. What Sulaiman Law fails to appreciate, however, is that, in waiting until the date Ms. Barrett's responses to Medicredit's discovery requests were due, it showed reckless disregard to the duties they owed to the Court. In fact, had Sulaiman Law simply looked at Ms. Barrett's publicly-available Facebook page, it would have found her sister listed under "Family and Relationships", viewed Ms. Barrett's sister's publicly-available Facebook page, and seen the public post announcing Ms. Barrett's death just as undersigned counsel's office did. Indeed, undersigned counsel's office was able to accomplish this task within mere hours after being notified that Ms. Barrett was deceased. It is thus simply not credible that Sulaiman Law engaged in reasonable efforts to view social media profiles to locate Ms. Barrett. That is, undersigned counsel's office, with minimal effort, was able to locate confirmation of Ms. Barrett's death. As such, Sulaiman Law would have done so as well had it engaged in a reasonable investigation.

More egregiously, Sulaiman Law showed reckless disregard for its duties under Rule 11 of the Federal Rules of Civil Procedure by signing the answers to Medicredit's Interrogatories to Ms. Barrett, Sulaiman Law represented that "the factual contentions" are true to the "best of [his] knowledge, information, and belief..." *See* F.R.C.P. 11(b)(3). While Sulaiman Law did not represent that Ms. Barrett had signed those answers, it affirmatively represented that she assisted in preparing them. Sulaiman Law attempts to obfuscate this issue by claiming this was not a false representation because Ms. Barrett had provided the needed information during the client intake process. Taking Mr. Volheim at his word that Ms. Barrett provided detailed information during the intake process, this fact does not make the assertion in the answers to the Interrogatories true. That is, while Ms. Barrett may have provided the factual information needed to draft the answers, she played no part in actually "answering these interrogatories" as represented by Sulaiman Law. *See* Doc. 34-2 at p. 1. Sulaiman Law also affirmatively represented that Mr. Volheim "assisted" Ms. Barrett in preparing the interrogatory answers. *Id.* Thus, Sulaiman Law, indeed, affirmatively misrepresented

that Ms. Barrett contemporaneously took part in the process of drafting the answers to Medicredit's interrogatories despite the fact she could not possibly have done so because of her death. Sulaiman Law, therefore, showed reckless disregard for its ethical duties under Rule 11, warranting sanctions under 28 U.S.C. § 1927.

....

Sulaiman Law argues, without citation to any authority, that, at most, Medicredit is only entitled to sanctions from the date it should have begun investigating whether Ms. Barrett died. Sulaiman Law, however, ignores that when "every facet of [this] litigation was patently meritless" and Plaintiff's counsel "wrongfully...persisted in its prosecution", an award of full defense costs is warranted under 28 U.S.C. § 1927. *Procter & Gamble Co. v. Amway Corp*, 280 F.3d 519, 526 (5th Cir. 2002). Sulaiman Law also does not contest the black letter law that when a client passes away, the attorney-client relationship immediately terminates. *See Murphy v. Murphy*, 21 S.W.3d 797, 798 (Tex. App. 2000) ("...it is well established that an attorney-client relationship terminates upon the death of the client."). Every action Sulaiman Law took in this case after Ms. Barrett passed away was thus "patently meritless" and "wrongfully persisted in" because Sulaiman Law no longer had authority to take any actions on Ms. Barrett's behalf. In fact, essentially every cost incurred by Medicredit occurred after December 18, 2017; it filed its motion for extension of the answer deadline after December 18, 2017, and filed its Answer after that date. Thus, all of Medicredit's attorney fees and costs were "excess" in this case because it was forced to participate in a lawsuit that Sulaiman Law had no authority to prosecute from December 18, 2017. Accordingly, this Court should award Medicredit its full cost of defense in this case.

....

The undisputed facts before this Court show that Sulaiman Law engaged in reckless disregard of its ethical duties to this Court. First, it is not indisputable that Ms. Barrett passed away on December 18, 2017. Further, Sulaiman Law admittedly made only minimal efforts to even contact its client, making just four attempts over the course of 10 months to contact her, and did not begin investigating why Ms. Barrett was unresponsive until the day her responses to Medicredit's discovery requests were due. Sulaiman Law further admits that it had no authority to act on Ms. Barrett's behalf once she died on December 18, 2017. As such, this case was patently meritless and wrongly prosecuted each day thereafter. This Court, therefore, should grant Medicredit's Motion for Sanctions and award it its full cost of defense in this case.

Dkt. No. 42 at 1-9.

To some extent, this case implicates the question of what a lawyer representing a plaintiff should do when his client goes missing or is non-responsive for a lengthy period of time. In this case, Barrett's counsel last had contact with her during their initial two-day interactions, 16 days before counsel filed the Complaint in this case.

One court, in the context of deciding whether to dismiss some missing plaintiffs' claims under Federal Rule of Civil Procedure 41(b) for failure to prosecute, noted that "[i]t is axiomatic that, when represented by counsel in a lawsuit, communication with counsel is the most basic form of participation in a lawsuit" and that, "[w]ithout direction from the client, counsel's hands are tied as to even small matters, let alone matters as important as settlement." *Wiggins v. Daymar Colleges Grp.*, LLC, 317 F.R.D. 42, 46 (W.D. Ky. 2016). The court in *Wiggins* further noted that

> [a] situation in which the party has simply vanished poses some problems for the analysis [of whether or not dismissal pursuant to Rule 41(b) is appropriate]. Presumably the missing Plaintiffs would have maintained communication with Plaintiffs' counsel if they were inclined to continue prosecuting the case; therefore, their failure to do so may be taken as evidence of willfulness or fault, but without the input of the missing Plaintiffs, the question of whether they decided to cease prosecuting this matter or instead were prevented by doing so from other circumstances remain unanswered.

*Id.* at 45-46.

In another case, defendants moved for dismissal as a sanction when plaintiffs failed to comply with a discovery order, and the court explained that

> defendant states that the captioned plaintiffs have failed to comply with Judge Cayer's Order (#197) as clarified by Order (#199), compelling those plaintiffs to file supplemental and verified responses to all interrogatories. While a number of plaintiffs served verified responses by the December 15, 2015, deadline, the captioned plaintiffs either failed to

serve at all or served unverified responses within the time allowed. In response, plaintiffs state that: two of the plaintiffs died before the Order issued; one complied, albeit after the deadline; and two of the plaintiffs cannot now be found. In reply, defendant argues that the court should, nevertheless, impose the sanction of involuntary dismissal as none of the reasons given excuse the non-compliance.

....

As to the two deceased plaintiffs (Rodgers and Sipes), the fundamental problem is not the lack of compliance with the discovery Order, but with non-compliance with the requirements of Rule 25(a)(1) for substitution of the deceased-plaintiffs' personal representatives. Indeed, if (as plaintiffs' counsel suggests) the two deceased plaintiffs died before Judge Cayer entered his Order, there was no lawful way for those plaintiff to comply absent first complying with Rule 25(a)(1), Federal Rules of Civil Procedure. While the court is uncertain as to the actual date of death of those plaintiffs, counsel for plaintiffs or their personal representatives have 90 days from the first suggestion of death on this record (which the court assumes is the date of plaintiffs' Response, January 15, 2016) to move to substitute such plaintiff's personal representative. Having considered the four factors [guiding consideration of dismissal as a sanction for non-compliance with a discovery order], the court determines that the sanction of dismissal is disproportionate to counsel's error and will instead consider, at the conclusion of trial, a request for a fee reduction (in the event plaintiffs prevail) or for costs and/or fees (in the event defendant prevails). Plaintiffs' counsel are, however, cautioned that it is their responsibility to keep up with their clients and that failure to comply with Rule 25(a)(1) may well result in the dismissal of these plaintiffs' claims in the end.

....

As to the lost plaintiffs (Garlington and Davis), as to whom plaintiffs' counsel has been unable to contact, the appropriate remedy is not found in a Rule 37 sanction, but in a Rule 41 dismissal for "failure to prosecute" inasmuch as such plaintiffs have, from all appearances, abandoned the prosecution by not keeping their attorneys informed of their mailing addresses.

*Scott v. Family Dollar Stores, Inc.*, Docket No. 3:08-cv-00540-MOC-DSC, 2016 WL 9651776, at *1-*2 (W.D.N.C. Feb. 5, 2016). And, as many other courts have observed, a "case belongs to [a plaintiff], not [her] counsel." *Burton v. City of Adairsville, Ga.*, Civ. A. No. 4:14-CV-0099-HLM, 2016 WL 5349474, at *1 n.1 (N.D. Ga. Mar. 7, 2016).

But Section 1927 sanctions require clear and convincing evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court and not mere negligence on counsel's part. And, to justify shifting the entire cost of defense, Medicredit must prove, by clear and convincing evidence, that every facet of this case was patently meritless and that Sulaiman lacked a reason to file the suit and wrongfully persisted in its prosecution through discovery and pre-trial motions.

Medicredit has not met this heavy burden. Sulaiman's failure to make contact with Barrett and to attempt such contact on more than four occasions in approximately 10 months might have been negligent in the face of a duty to keep up with its client. Sulaiman's failure to further investigate the basis for Barrett's lack of responsiveness in those 10 months – and therefore its failure to discover that Barrett died in December 2017 – may or may not have been negligent, even with Sulaiman's efforts in October 2018 to obtain Accurint reports. But, where Section 1927 is construed strictly in favor of the sanctioned party, and punishment under Section 1927 is to be sparingly applied, Medicredit has not shown that Sulaiman recklessly disregarded any duty to the court.

Medicredit relies on Sulaiman's lacking legal authority to represent Barrett after she died, but that is relevant to Section 1927 sanctions only if Sulaiman knew or was in reckless disregard of a duty to discover sooner that Barrett was deceased. Medicredit has not made such a showing by clear and convincing evidence.

And Medicredit has not met its even higher burden to show clear and convincing evidence that it should be awarded its entire cost of defenses because Sulaiman lacked a reason to file this action on Barrett's behalf in the first instance – at a time when

Barrett was still alive – and then, under the circumstances, and wrongfully persisted in its prosecution through discovery and pre-trial motions by recklessly disregarding duties to the Court.

Finally, to the extent that Medicredit relies on Federal Rule of Civil Procedure 11 in connection with Sulaiman's preparing, serving, and signing interrogatory answers purportedly on Barrett's behalf to support Section 1927 sanctions, that reliance is misplaced. Federal Rule of Civil Procedure 11(d) provides that Rule 11 "does not apply to disclosures and discovery requests, responses, objections, and motions under [Federal Rules of Civil Procedure] 26 through 37." FED. R. CIV. P. 11(d).

Federal Rule of Civil Procedure 26(g) does impose duties on attorneys preparing and signing discovery responses:

> (g) Signing Disclosures and Discovery Requests, Responses, and Objections.
>> (1) Signature Required; Effect of Signature. Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name – or by the party personally, if unrepresented – and must state the signer's address, e-mail address, and telephone number. By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
>>> (A) with respect to a disclosure, it is complete and correct as of the time it is made; and
>>> (B) with respect to a discovery request, response, or objection, it is:
>>>> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
>>>> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

> (iii) neither unreasonable nor unduly burdensome or
> expensive, considering the needs of the case, prior
> discovery in the case, the amount in controversy, and
> the importance of the issues at stake in the action.
> ....
> (3) Sanction for Improper Certification. If a certification violates
> this rule without substantial justification, the court, on motion or
> on its own, must impose an appropriate sanction on the signer, the
> party on whose behalf the signer was acting, or both. The sanction
> may include an order to pay the reasonable expenses, including
> attorney's fees, caused by the violation.

FED. R. CIV. P. 26(g)(1), 26(g)(3).

But Medicredit has not shown by clear and convincing evidence that Barrett's counsel violated any Rule 26(a)(1)(B) duty in preparing and signing interrogatory answers based on the information that Barrett provided during the intake process in November 2017 and that, in that sense, Barrett assisted in preparing.

## Conclusion

For the reasons and to the extent explained above, the Court DENIES Defendant Medicredit, Inc.'s Motion for Sanctions [Dkt. No. 92].

SO ORDERED.

DATED: March 25, 2019

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE